BLANK ROME LLP
Andrew T. Hambelton (AH-3005)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

John E. Lucian (*pro hac vice* motion to be filed)
Louis D. Abrams (*pro hac vice* motion to be filed)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Plaintiff*
*America's Business Capital, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMERICA'S BUSINESS CAPITAL, LLC,    :  Civil Action No.:
                                    :
        Plaintiff,                  :
                                    :
    -vs-                            :
                                    :  **COMPLAINT**
INTERNATIONAL PROFESSIONAL          :
SERVICES d/b/a PSC, INC.            :
                                    :
        Defendant.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff America's Business Capital, LLC ("ABC") sues Defendant International Professional Services d/b/a PSC, Inc. ("PSC") and alleges the following.

**INTRODUCTION**

1.   This matter arises from PSC's fraudulent conduct and material breaches of contract in connection with its operation and administration of an electronic merchant exchange (the "MCA Exchange") through which merchant cash advance providers, such as ABC, can enter into "syndicated" deals brokered by PSC.

2. PSC owns, operates, and is solely responsible for administering the "MCA Exchange." ABC is in the business of providing merchant cash advances to businesses in need of short-term capital and has done so through the MCA Exchange.

3. PSC repeatedly represented and promised ABC that it conducted thorough due diligence on all entities approved to participate in the MCA Exchange. However, PSC violated these obligations and knowingly and/or recklessly permitted the MCA Exchange to be used to promote fraudulent deals in an effort to generate increased revenue for PSC.

4. PSC has also taken a number of actions adverse to ABC in violation of its duties and contractual obligations, including improperly withholding returns owed to ABC.

5. PSC has ignored, and continues to ignore, ABC's demands that PSC cease its harmful conduct, which already has caused in excess of $250,000 in damages to ABC.

## PARTIES

6. Plaintiff ABC is a New Jersey limited liability company with a principal place of business at 535 Rt. 38 E, Suite 110, Cherry Hill, NJ.

7. Defendant PSC is a New York corporation with its principal place of business at 110 Harbor Park Drive, Port Washington, NY.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of value of $75,000, exclusive of interest and costs, and is between citizens of different states as detailed as follows.

9. ABC is a New Jersey LLC located at 535 Rt. 38 E, Suite 110, Cherry Hill, NJ.

10. ABC is owned and composed of two member companies: (a) M.S. Acquisitions & Holdings, LLC and (b) GD Capital Group LLC.

11. M.S. Acquisitions & Holdings LLC is a Florida company located at 720 South 5th Avenue, Unit 309, Naples, Florida 34102. M.S. Acquisition & Holdings LLC is a single member LLC owned by Michael Sciore. Mr. Sciore is a Florida resident who resides at 720 South 5th Avenue, Unit 309, Naples, Florida 34102.

12. GD Capital Group LLC is a New Jersey company located at 535 Rt. 38 E, Suite 110, Cherry Hill, NJ. GD Capital Group LLC is a single member LLC owned by Greg DeMinco. Mr. DeMinco is a New Jersey resident who resides at 228 Leffler Circle, Florence, NJ 08518.

13. Defendant PSC is a New York corporation with its principal place of business at 110 Harbor Park Drive, Port Washington, NY.

14. As such, there is complete diversity between the parties.

15. This Court has personal jurisdiction over PSC because it did business with ABC in this District, and further consented to jurisdiction in this forum through the express terms of the parties' November 26, 2014 agreement discussed below.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the Southern District of New York. Venue is also proper pursuant to the forum selection clause in the parties' agreement.

**FACTUAL BACKGROUND**

17. In operating its MCA Exchange, PSC acts as an intermediary, soliciting and matching merchant advance companies to participate in jointly-funded (i.e., "syndicated") deals.

18. In addition, PSC provides a self-described "front-end-to-back-end relationship management solution system" designed to "track all applications, documents, deals,

commissions, and provide[ ] members with management reports to manage their business efficiently."

19. PSC receives fees for arranging these deals and providing such administrative services.

20. In or around November 2014, ABC and PSC entered into discussions regarding ABC joining the MCA Exchange.

21. In these discussions, PSC executives repeatedly represented that PSC conducts extensive due diligence on all companies, as well as their principals, before any entity is approved to become a "member" on the MCA Exchange. The purpose of such due diligence is to ensure that neither the company nor its principals had a history of fraudulent or criminal activity.

22. Further, as reflected on its website, PSC promised "full transparency" in that it would disclose all relevant and material information it had in its possession regarding other members of the MCA Exchange. *See* PSC Homepage, Syndication Module, https://pscny.us/

23. Based on these representations and promises, ABC joined the MCA Exchange in 2014.

24. Before it could participate in any deals on the MCA Exchange, ABC's principals submitted to a background check. It was represented to ABC that the principals of the other members on the MCA Exchange underwent similar background checks.

25. On November 26, 2014, ABC and PSC entered into the ARMS General Agreement (the "Agreement") pursuant to which PSC was to provide administrative services to ABC, including collecting payments owed to ABC, and electronically remitting such payments to ABC. Per the Agreement, ABC was also granted access to PSC's exchange platform, which

contained software that allowed it to track all of its deals carried out on the MCA Exchange and earned commissions. A true and correct copy of the ARMS General Agreement is attached hereto as Exhibit "A."

### PSC's "Member Referrals"

26. To generate fees for its platform, PSC actively solicited the exchange members to participate in syndicated deals. Such solicitations commonly took the form of emails from PSC employees known as "Member Referrals."

27. In such emails, PSC employees would "connect" two companies via email and then recommend that they work together on business deals.

28. As it was conveyed to ABC, PSC's referral and promotion of a member on the exchange operated as a representation that the specific company recommended passed a thorough background check and that neither the company nor its principals were involved in past fraudulent or criminal activity and/or allegations of the same.

29. With PSC handling such background due diligence, ABC would make the company-specific decision whether the specific deal terms (e.g., funding amount, return) were suitable for its merchant cash advance business.

### PSC Promotes Companies Tied to Mark Mancino

30. In March 2015, PSC urged ABC through its "member referral" program to participate in syndicated deals with a company known as American Funding, LLC a/k/a American Funding Group ("American Funding") and its principal, Mark Mancino.

31. Based on PSC's recommendation and ABC's understanding that American Funding had passed PSC's due diligence protocols, ABC participated in 14 deals with American Funding (the "American Funding Deals") from March 2015 to October 2015.

32. The total amount advanced by ABC in the American Funding Deals was $249,500.

33. Every one of those deals involving American Funding led to a default and loss for ABC.

34. Since that time, ABC discovered that PSC officers who promoted deals involving American Funding, Thomas Plamenco and Joel Nazareno, were named as criminal defendants, along with Mark Mancino, in a federal indictment.  Plamenco was the specific PSC officer who helped broker the American Funding Deals, while Nazareno was the owner of PSC when the company solicited ABC to participate in deals with American Funding.

35. Specifically, ABC discovered that in 2011, Mancino, Plamenco, and Nazareno were charged for their alleged participation in a purported massive "pump and dump" securities fraud scheme.  Upon information and belief, Mancino, Plamenco, and Nazareno were connected to brokerage firms that allegedly defrauded the firms' customers in connection with the purchase and sale of different "House Stocks."  The brokerage firms allegedly acquired these securities inexpensively and then sold their shares at a substantial profit after purportedly creating artificial market demand by offering incentives to brokers to aggressively market the House Stocks.

36. Upon information and belief, a jury found Nazareno and Plamenco guilty for their role in the scheme.

37. Upon information and belief, Mancino pled guilty to charges in connection with this scheme.

38. PSC did not disclose this information to ABC.

39. Had ABC known that the owner of PSC and its officers were allegedly involved in a past fraudulent scheme of the magnitude, it would have never joined the MCA Exchange.

Likewise, if ABC had known of Mancino's alleged past criminal conduct, it never would have participated in the deals he syndicated on behalf of American Funding.

40. Yet, none of this information was disclosed to ABC as PSC was eager to coordinate as many deals as possible to increase its fees.

### PSC Takes Action Adverse to ABC

41. PSC has recently taken a number of additional actions to harm ABC.

42. Pursuant to the Agreement, ABC paid PSC a monthly fee for PSC's services.

43. Even though ABC has made all payments due and owing to PSC up through January 2017, PSC has restricted ABC's access to its platform since January 11, 2017.

44. PSC has also stopped remitting returns owed to ABC from the merchants who had received cash advances. Further, upon information and belief, at least some of the money owed to ABC has been diverted by PSC to American Funding.

45. PSC has also stopped processing ABC's payments with the ACH provider as they are contractually obligated to do and have been withdrawing funds directly from ABC's merchant accounts. Because PSC has stopped processing payments with the ACH provider, ABC has been forced to process its own payments with another ACH provider. This is causing merchants to be charged twice—once improperly by PSC and once by ABC. ABC has thus been forced to refund some of the overpayments to merchants.

46. These "double charges" have also created significant reputational harm for ABC.

47. Upon information and belief, PSC is withholding funds in this matter to try to leverage ABC to bend to its will in an unrelated business dispute involving an entity other than PSC, which is owned by the current principal of PSC, Russ Heiser.

7

## COUNT I – FRAUD

48. ABC repeats and realleges each allegation contained in the foregoing paragraphs as if fully set forth herein.

49. Despite knowing that American Funding was involved in fraudulent conduct, PSC allowed American Funding to trade on the MCA Exchange.

50. Even further, PSC actively solicited ABC to participate in deals with American Funding. PSC also brokered the deal between American Funding and ABC and handled all associated administrative duties.

51. By actively soliciting ABC's participation in a syndicated deal with American Funding, PSC assumed a duty to disclose any material information in its possession regarding American Funding and Mark Mancino.

52. Moreover, PSC had explicitly represented to ABC that it performed extensive background due diligence on all members of the MCA Exchange.

53. Further, as set forth above, PSC failed to disclose that Tom Plamenco and Joel Nazareno were involved in business dealings with Mark Mancino that led to criminal charges.

54. PSC made each misrepresentation and/or omission with the intent to deceive and for the purpose of inducing ABC to act upon them by entering into deals with PSC so as to generate ill-gotten profits for PSC.

55. ABC justifiably relied on such misrepresentations and/or omissions in participating in the American Funding Deals.

56. As a direct and proximate cause of their reliance upon the false representations and omissions by PSC subject to this count, ABC has suffered substantial damages, and continues to suffer damages, as result of PSC's fraudulent conduct.

## COUNT II – NEGLIGENT MISREPRESENTATION

57. ABC repeats and realleges each allegation contained in the foregoing paragraphs as if fully set forth herein.

58. Despite knowing that American Funding was involved in fraudulent conduct, PSC allowed American Funding to trade on the MCA Exchange.

59. Even further, PSC actively solicited ABC to participate in deals with American Funding. PSC also brokered the deal between American Funding and ABC and handled all administrative duties.

60. By actively soliciting ABC's participation in a syndicated deal with American Funding, PSC assumed a duty to disclose any material information in its possession regarding American Funding and Mark Mancino.

61. PSC failed to disclose the following material information, among other things, which rendered their representations false: that PSC was in fact not engaging in customary, or even minimal, due diligence to verify that American Funding and/or its principals did not have a history of alleged fraudulent or criminal activity.

62. PSC made the false representations and material omissions knowing that ABC would use and rely upon the representations and omissions for the particular purpose of determining who to partner with in structuring its deals.

63. ABC justifiably relied on such misrepresentations and/or omissions in choosing to participate in the American Funding Deals.

64. PSC knew and understood that ABC would rely upon the false statements and material omissions for the particular purpose of choosing to participate in the American Funding Deals.

65. As a direct and proximate cause of their reliance upon the false representations and omissions by PSC subject to this count, ABC has suffered substantial damages, and continues to suffer damages, as result of PSC's grossly negligent conduct.

## COUNT III – BREACH OF CONTRACT

66. ABC repeats and realleges each allegation contained in the foregoing paragraphs as if fully set forth herein.

67. PSC and ABC voluntarily entered into and are parties to the Agreement.

68. ABC at all times has performed its obligations under the Agreement.

69. The Agreement required PSC to perform a number of "services" including providing access to the PSC platform and collecting any returns owed to ABC.

70. PSC materially breached all of these obligations under the Agreement by failing to perform these "services."

71. By reason of the foregoing, ABC has suffered substantial damages, and continues to suffer damages, as result of PSC's conduct.

## COUNT IV – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

72. ABC repeats and realleges each allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Underlying the Agreement is an implied covenant of good faith and fair dealing that attaches to all contracts under New York law. In the present case, the implied covenant prohibits the parties from engaging in arbitrary or unreasonable conduct that frustrates the purpose of the Agreement or otherwise prevents the other party from receiving the fruits of the Agreement.

74. At all relevant times, ABC has performed all of its obligations under the Agreement.

75. By permitting American Funding to carry out deals on the MCA Exchange, PSC violated its own assurances that it conducted extensive background checks. Such actions were either grossly negligent or wrongful, and PSC breached the implied covenant of good faith and fair dealing, frustrated the purposes of the Agreement, and destroyed ABC's expectations that American Funding had no history of alleged fraudulent or criminal activity.

76. Further, PSC orchestrated the syndicated deals involving American Funding in bad faith with the express intent to obtain an economic benefit at the expense of ABC. PSC also acted in bad faith by omitting the following information within its possession: that Mancino, Plamenco, and Nazareno were all charged for their purported involvement in a criminal scheme.

77. Similarly, PSC has frustrated the purpose of the Agreement by restricting ABC's access to the PSC platform and failing to make the necessary cash advances to various merchants, as well as failing to pay remittances owed to ABC. PSC has failed to take such actions for the improper purpose of forcing ABC to take action in an unrelated business dispute. As ABC has performed all of its obligations under the Agreement, PSC is not within its right to breach its contractual obligations in this regard.

78. By reason of the foregoing, ABC has suffered substantial damages, and continues to suffer damages, as result of PSC's conduct.

## COUNT V – CONVERSION

79. ABC repeats and realleges each allegation contained in the foregoing paragraphs as if fully set forth herein.

80. PSC has acquired, used, and controlled ABC's assets for its own benefit, constituting conversion.

81. PSC has refused to remit funds that were collected from merchants who were given cash advances by ABC. Such funds are due and owing to ABC.

82. The existence and amounts of such funds are readily identifiable.

83. As a result, PSC has unlawfully appropriated funds owed to ABC. Likewise, PSC has exercised dominion and control over ABC's assets in a manner that is inconsistent with ABC's clear legal right to such funds.

84. The conduct above was deliberate and intentional.

85. By reason of the foregoing, ABC has suffered substantial damages, and continues to suffer damages, as result of PSC's conduct.

**WHEREFORE,** ABC demands that this Court enter judgment in their favor and against PSC:

    a. Awarding ABC damages in an amount to be determined at trial, but in no event less than $250,000 together with interest;

    b. Awarding ABC attorneys' fees; and

    c. Awarding ABC such other and further relief as this Court deems just and proper.

Dated:    New York, New York
February 21, 2017

**BLANK ROME LLP**

By:   */s/ Andrew T. Hambelton*

Andrew T. Hambelton (AH-3005)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

John E. Lucian (*pro hac vice* motion to be filed)
Louis D. Abrams (*pro hac vice* motion to be filed)
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
(215) 569-5500

*Attorneys for Plaintiff*
*America's Business Capital, LLC*